FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEVAS MULTIMEDIA PRIVATE LIMITED, | No. 20-36024 |
| *Petitioner-Appellee*, | D.C. No. 2:18-cv-01360-TSZ |
| CC/DEVAS (MAURITIUS) LIMITED; DEVAS MULTIMEDIA AMERICA, INC.; DEVAS EMPLOYEES MAURITIUS PRIVATE LIMITED; TELCOM DEVAS MAURITIUS LIMITED, | |
| *Appellees-Intervenors*, | OPINION |
| v. | |
| ANTRIX CORP. LTD., | |
| *Respondent-Appellant*. | |

| | |
|---|---|
| DEVAS MULTIMEDIA PRIVATE LIMITED, | No. 22-35085 |
| *Petitioner-Appellant*, | D.C. No. 2:18-cv-01360-TSZ |
| CC/DEVAS (MAURITIUS) | |

LIMITED; TELCOM DEVAS
MAURITIUS LIMITED; DEVAS
MULTIMEDIA AMERICA, INC.;
DEVAS EMPLOYEES MAURITIUS
PRIVATE LIMITED,

*Intervenor-Plaintiffs-
Appellees*,

v.

ANTRIX CORP. LTD.,

*Respondent.*

---

DEVAS MULTIMEDIA PRIVATE
LIMITED,

*Petitioner*,

and

CC/DEVAS (MAURITIUS)
LIMITED; DEVAS MULTIMEDIA
AMERICA, INC.; DEVAS
EMPLOYEES MAURITIUS
PRIVATE LIMITED; TELCOM
DEVAS MAURITIUS LIMITED,

*Intervenor-Plaintiffs-
Appellees*,

No. 22-35103

D.C. No.
2:18-cv-01360-
TSZ

v.

ANTRIX CORP. LTD.,

*Respondent-Appellant*.

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted March 10, 2026
San Francisco, California

Filed August 12, 2026

Before:  Eric D. Miller and Lucy H. Koh, Circuit Judges,
and Donald W. Molloy,[*] District Judge.

Opinion by Judge Koh

---

[*] The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

# SUMMARY[**]

### Arbitration

The panel affirmed in part, reversed in part, and vacated in part the district court's judgment confirming, under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), an international arbitral award against Antrix Corp. Ltd., a corporation wholly owned by India.

In a prior decision applying then-controlling circuit precedent, the panel held that the Foreign Sovereign Immunities Act's (the "FSIA") personal jurisdiction provision required a traditional minimum contacts analysis, that Antrix lacked sufficient contacts with the United States, and that the district court therefore erred in exercising personal jurisdiction over Antrix. The Supreme Court reversed, holding that the FSIA does not require a plaintiff to establish minimum contacts over and above the contacts already required by the FSIA's enumerated exceptions to foreign sovereign immunity before a federal court may exercise personal jurisdiction over a foreign state. The Supreme Court remanded for the panel to address the alternative arguments that Antrix had raised, consistent with principles of forfeiture and waiver.

First, the panel held that the FSIA's arbitration exception to foreign sovereign immunity, which waives immunity for

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

suits to confirm arbitration awards, supplied the district court with subject matter jurisdiction.

Second, the panel held that, even assuming Antrix was a "person" entitled to the protections of the Due Process Clause of the Fifth Amendment and assuming that a reasonableness assessment is required under the Fifth Amendment, the exercise of personal jurisdiction over Antrix was reasonable and therefore comported with the Fifth Amendment.

Third, the panel rejected Antrix's argument that the district court should have dismissed this action under the doctrine of *forum non conveniens* in favor of litigation in India. The panel held that *forum non conveniens* does not apply in an action to confirm a foreign arbitral award under the Convention because the Convention mandates recognition and enforcement of an award covered by the Convention in every contracting nation. Further, a foreign court cannot attach assets located in the United States and therefore cannot serve as an adequate alternative forum to U.S. courts. The panel noted that in any event, *forum non coveniens* did not require dismissal here.

Accordingly, the panel affirmed the judgment of the district court as to subject matter jurisdiction, personal jurisdiction, and *forum non conveniens*. In a concurrently-filed memorandum disposition, the panel affirmed the district court's confirmation of the arbitral award and its registration of the judgment as to intervenor Devas Multimedia America, Inc., but reversed and vacated in part as to shareholder intervenors' standing to register the judgment and remanded for the district court to address in the first instance the effect of the Indian courts' subsequent set-aside of the award.

## COUNSEL

Christopher E. Tutunjian (argued) and Aaron M. Streett, Baker Botts LLP, Houston, Texas, for Petitioner-Appellee.

Matthew D. McGill (argued), Amy R. Upshaw, Nicholas A. Mecsas-Faxon, and Arka Gupta, King & Spalding LLP, Washington, D.C.; Kevin D. Mohr, King & Spalding LLP, Houston, Texas; Lee R. Crain and Anne M. Champion, Gibson Dunn & Crutcher LLP, New York, New York; David W. Casazza and Jacob T. Spencer, Gibson Dunn & Crutcher LLP, Washington, D.C.; Malaika Eaton, McNaul Ebel Nawrot & Helgren PLLC, Seattle, Washington; for Appellees-Intervenors.

Amanda S. Berman (argued), Nicholas Roberti, Neil Nandi, and T. Michael Guiffre, Crowell & Moring LLP, Washington, D.C.; Jennifer S. Romano, Crowell & Moring LLP, Los Angeles, California; Brian C. Free and Louis D. Peterson, Hillis Clark Martin & Peterson PS, Seattle, Washington; Kevin A. Meehan, Marwa Farag, Joseph D. Pizzurro, and Juan O. Perla, Curtis Mallet-Prevost Colt & Mosle LLP, New York, New York; Kwaku A. Akowuah, Gregory M. Williams, Madeleine Joseph, and Carter G. Phillips, Sidley Austin LLP, Washington, D.C.; for Respondent-Appellant.

# OPINION

KOH, Circuit Judge:

This case arises out of the efforts of Devas Multimedia Private Ltd. ("Devas") and four intervenors—three of Devas's Mauritian shareholders (the "Shareholder Intervenors") and Devas Multimedia America, Inc. ("DMAI")—to enforce a $562.5 million international arbitral award (the "Award") against Antrix Corp. Ltd. ("Antrix"), a corporation wholly owned by India. Devas and Intervenors sought to confirm the Award in the United States under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"). The district court confirmed the Award, and Antrix appealed.

In a prior decision applying then-controlling circuit precedent, we held that the Foreign Sovereign Immunities Act's (the "FSIA") personal jurisdiction provision required a traditional minimum contacts analysis, that Antrix lacked sufficient contacts with the United States, and that the district court therefore erred in exercising personal jurisdiction over Antrix. The Supreme Court reversed our decision and held that the FSIA does not require a plaintiff to establish "'minimum contacts' over and above the contacts already required by the [FSIA]'s enumerated exceptions to foreign sovereign immunity" before a federal court may exercise personal jurisdiction over a foreign state. *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 232 (2025). The Supreme Court remanded for us to address the alternative arguments that Antrix had raised, "consistent with principles of forfeiture and waiver." *Id.* at 237.

We address three questions in this opinion. First, we consider whether the district court had subject matter jurisdiction under an exception to foreign sovereign immunity in the FSIA. Second, we consider whether the exercise of personal jurisdiction over Antrix is consistent with the Due Process Clause of the Fifth Amendment. Third, we consider whether the doctrine of *forum non conveniens* required the district court to dismiss this action. We hold that the FSIA's arbitration exception to foreign sovereign immunity supplies subject matter jurisdiction. We further hold that, even assuming Antrix is a "person" entitled to the protections of the Fifth Amendment and assuming that a reasonableness assessment is required under the Fifth Amendment, the exercise of personal jurisdiction over Antrix is reasonable and therefore comports with the Fifth Amendment. Finally, we hold that *forum non conveniens* does not apply in an action to confirm a foreign arbitral award under the New York Convention and, in any event, did not require dismissal here.

We affirm the judgment of the district court in part and reverse and vacate in part, as set forth in this opinion and in the concurrently filed memorandum disposition.[1]

---

[1] We resolve the remaining issues—relating to the district court's confirmation of the Award under the Convention, the registration of the resulting judgment, and the effect of the Indian courts' subsequent set-aside of the Award—in a memorandum disposition filed concurrently with this opinion.

# I. Background

## A. Statutory Framework

### 1. The Foreign Sovereign Immunities Act

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). The FSIA "codifies a baseline principle of immunity for foreign states and their instrumentalities," and "then sets out exceptions to that principle." *Türkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 272 (2023); *see* 28 U.S.C. §§ 1604-1607. The FSIA defines a "foreign state" to include an "agency or instrumentality of [that] foreign state." *See* 28 U.S.C. § 1603(a)-(b) (defining "foreign state" to include an entity "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof"). The parties agree that Antrix is wholly owned by India and therefore qualifies as a foreign state under the FSIA.

As relevant here, the FSIA includes an "arbitration exception" to foreign sovereign immunity. The arbitration exception provides that a foreign state is not immune in any action brought "to confirm an award made pursuant to . . . an agreement to arbitrate" with the foreign state, where the agreement "concern[s] a subject matter capable of settlement by arbitration under the laws of the United States," and where "the agreement or award is or may be governed by a treaty or other international agreement in force for the

United States calling for the recognition and enforcement of arbitral awards."[2] *Id.* § 1605(a)(6).

Additionally, the FSIA provides that "[p]ersonal jurisdiction over a foreign state shall exist" as to every claim for which an exception to immunity applies and where service has been made. *Id.* § 1330(b).

### 2. The New York Convention

The New York Convention was concluded in 1958. *See* 21 U.S.T. 2517, T.I.A.S. No. 6997. The Convention provides for "the recognition and enforcement of arbitral awards made in the territory of" a foreign state. N.Y. Convention art. I(1). In 1970, the United States acceded to the Convention,

---

[2] In full, the arbitration exception provides that a foreign state is not immune in any case:

> in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

28 U.S.C. § 1605(a)(6).

and Congress implemented the Convention by amending Title 9 of the United States Code. As amended, Title 9 provides that the Convention "shall be enforced in United States courts in accordance with" Title 9, Chapter 2. 9 U.S.C. § 201. It further provides that the federal district courts "shall have original jurisdiction over" "an action or proceeding falling under the Convention," which "shall be deemed to arise under the laws and treaties of the United States." *Id.* § 203. Through acceding to the Convention and enacting this implementing legislation, the United States sought "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Both the United States and India are signatories to the Convention. *See* 21 U.S.T. 2517, 330 U.N.T.S. 38 (listing contracting states).

A party that prevails in an arbitration holds an award, not a judgment, and the award is not self-executing. To become enforceable under the New York Convention, the award must first be "confirmed," *i.e.*, reduced to a judgment in a court. *See* 9 U.S.C. § 207 (authorizing a party to apply "for an order confirming the award"); *cf. Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 118-19 (2d Cir. 2017) (describing confirmation as the step that converts an arbitration award into an enforceable judgment).

Because the Convention mandates recognition and enforcement absent an enumerated defense, a party holding a single award may seek confirmation in the courts of any contracting state where the losing party holds assets. *See* N.Y. Convention art. III (providing that each contracting state "shall recognize arbitral awards as binding and enforce

them"); *id.* art. V (enumerating the exclusive grounds on which recognition and enforcement "may be refused"); *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 835-36 (9th Cir. 2010) ("We must confirm an arbitration award falling under the New York Convention unless we determine that 'one of the grounds for refusal or deferral of recognition or enforcement of the award specified'" in the Convention applies. (quoting 9 U.S.C. § 207)).

Under the FSIA, a foreign state's property located within the United States "shall be immune from . . . execution except as provided" within the FSIA. 28 U.S.C. § 1609. Relevant here, the FSIA lifts that immunity for commercial property located within the United States that is owned by a foreign state or the foreign state's agency or instrumentality when execution proceeds "upon a judgment entered by a court of the United States or of a State" in an action in which foreign sovereign immunity is withdrawn. *Id.* § 1610(a), (b). Only courts in the United States, then, can reach a foreign sovereign's commercial property located here. *See TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 303-04 (D.C. Cir. 2005) (reasoning from 28 U.S.C. §§ 1609 and 1610(a)(6) that only courts in the United States can attach a foreign state's United States assets).

## B.  The Agreement and the Arbitration

Antrix is a corporation wholly owned by India that acts "as the commercial arm/corporate front" of the Indian Department of Space and the Indian Space Research Organisation ("ISRO"). Devas is an Indian corporation with its principal place of business in Bangalore, India.

On January 28, 2005, Antrix and Devas entered an "Agreement for the Lease of Space Segment Capacity on ISRO/Antrix S-Band Spacecraft by Devas" (the

"Agreement"). Under the Agreement, Antrix agreed to build, launch, and operate two satellites and to lease to Devas 70 MHz of India's S-band spectrum, a portion of the radio-frequency spectrum. In exchange, Devas agreed to pay construction fees for the satellites and leasing fees for the spectrum.

On February 25, 2011, Antrix informed Devas that it was terminating the Agreement and communicated that the Government of India had made "a policy decision not to provide orbital slot in S-Band" for commercial activities. Devas rejected the termination and, on July 1, 2011, commenced an arbitration before the International Chamber of Commerce ("ICC").[3] On September 14, 2015, a three-member tribunal of the ICC held that Antrix had wrongfully repudiated the Agreement and awarded Devas the Award.[4]

## C. Proceedings Below and the Prior Appeal

In 2018, Devas petitioned to confirm the Award in the Western District of Washington. The district court denied Antrix's motion to dismiss and confirmed the Award. Relevant here, the district court concluded that it had subject matter jurisdiction under the FSIA's arbitration exception and the New York Convention's implementing legislation, 9 U.S.C. § 201, and had personal jurisdiction over Antrix

---

[3] Article 20 of the Agreement provides that any dispute arising under the Agreement shall be arbitrated before a three-member tribunal, seated in New Delhi, with proceedings "held in accordance with the rules and procedures of the ICC (International Chamber of Commerce) or UNCITRAL."

[4] After the district court confirmed the Award in this action, the Indian courts set the Award aside. The effect of that set-aside is not before us. As we explain in the concurrently filed memorandum disposition, it is a matter for the district court to address in the first instance.

under the FSIA's personal jurisdiction provision, 28 U.S.C. § 1330(b). The district court also declined to dismiss the action on *forum non conveniens* grounds.[5] Antrix appealed.

In our prior decision applying then-controlling circuit precedent, we held that the FSIA required a traditional minimum contacts analysis and that Antrix lacked sufficient contacts with the United States. *Devas Multimedia Priv. Ltd. v. Antrix Corp.*, Nos. 20-36024, 22-35085, 22-35103, 2023 WL 4884882 (9th Cir. Aug. 1, 2023) (mem.), *rev'd sub nom.*, *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223 (2025). We reversed on that basis and did not reach Antrix's remaining arguments. The Supreme Court reversed, holding that the FSIA imposes no minimum contacts requirement beyond its enumerated exceptions, and remanded for us to address Antrix's alternative arguments. *CC/Devas*, 605 U.S. at 232, 237.

## II.  Jurisdiction and Standard of Review

Although disputed here, the district court had jurisdiction under 9 U.S.C. § 203 and 28 U.S.C. §§ 1330(a)-(b), 1605(a)(6), and we have jurisdiction under 9 U.S.C. § 16(a)(1)(D) and 28 U.S.C. § 1291.

We review questions of subject matter jurisdiction and personal jurisdiction de novo. *Lake v. Ohana Mil. Cmtys., LLC*, 14 F.4th 993, 1000 (9th Cir. 2021); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021). We review the denial of a motion to dismiss for *forum non conveniens*

---

[5] The district court also made several other rulings that we address in the concurrently filed memorandum disposition, including its confirmation of the Award under the New York Convention and its rulings on the registration of the judgment.

for abuse of discretion. *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1163 (9th Cir. 2020).

## III. Analysis

### A.  Subject Matter Jurisdiction Under the FSIA

The FSIA's arbitration exception permits the exercise of subject matter jurisdiction over this case. *See* 28 U.S.C. § 1605(a)(6). The arbitration exception "waives immunity for suits to confirm arbitration awards." *CC/Devas*, 605 U.S. at 230. Recall that the exception applies, as relevant here, to actions brought "to confirm an award made pursuant to" an agreement to arbitrate with a foreign state, where the agreement "concern[s] a subject matter capable of settlement by arbitration under the laws of the United States," and where "the agreement or award is or may be governed by a treaty . . . in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).

The parties agree that this action was brought to confirm an award made pursuant to an arbitration agreement governed by the New York Convention, which is a treaty "in force for the United States calling for the recognition and enforcement of arbitral awards." *Id.* Therefore, the parties' dispute centers on the arbitration exception's requirement that the arbitration agreement "concern[] a subject matter capable of settlement by arbitration under the laws of the United States." *Id.* Antrix argues that disputes concerning "purely foreign commerce," such as the one between Antrix and Devas, lack an adequate commercial nexus to the United States and therefore inherently do not "concern a subject matter capable of settlement by arbitration under the laws of the United States." *Id.* We disagree.

"We start where we always do: with the text of the statute." *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023) (citation modified). The arbitration exception requires only that the agreement concern a subject matter "capable of settlement by arbitration under the laws of the United States." 28 U.S.C. § 1605(a)(6). It contains no requirement that the underlying commerce that is the subject of the arbitration have a nexus with the United States. Congress knew how to impose such a limitation but did not do so here. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (citation omitted)). The commercial activity exception to foreign sovereign immunity in the FSIA, for instance, expressly conditions the exception on a connection to United States commerce: The action must be based "upon a commercial activity carried on in the United States by the foreign state," "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere," or "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere" that "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2); *see also id.* § 1603(e) (defining a "commercial activity carried on in the United States by a foreign state" as one "having substantial contact with the United States"). The arbitration exception contains no comparable language requiring a commercial nexus with the United States, and we will not supply it. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020) (observing that the Court does not "usually read into statutes words that aren't there").

Moreover, the New York Convention and its implementing legislation make clear that the Agreement "concern[s] a subject matter capable of settlement by arbitration under the laws of the United States." 28 U.S.C. § 1605(a)(6). The Convention requires the United States to enforce certain arbitral awards made abroad, N.Y. Convention art. I(1), and its implementing legislation provides that an "action or proceeding falling under the Convention" "shall be deemed to arise under the laws and treaties of the United States," 9 U.S.C. § 203. An arbitral award subject to the Convention therefore concerns a subject matter capable of settlement by arbitration under United States law.[6]

The New York Convention and its implementing legislation do not require a commercial nexus between an arbitral award and a signatory nation. The Convention's implementing legislation defines the agreements covered to "includ[e]" agreements described in the Federal Arbitration Act ("FAA"). 9 U.S.C. § 202. Although the FAA itself limits its definition of "commerce" to commerce within or "with" the United States, or "between" the United States and a foreign nation, *id.* § 1, that limitation does not carry over to

---

[6] As the Intervenors observe, federal law may nevertheless bar arbitration concerning particular subjects through "express congressional language." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 639 n.21 (1985); *see, e.g.*, 9 U.S.C. § 402(a) (providing that no pre-dispute arbitration agreement "shall be valid or enforceable" with respect to a case relating to a sexual assault or sexual harassment dispute). But Antrix identifies no statute barring arbitration of this dispute, and courts may not impose "judicially implied exception[s]" to arbitrability that would "subvert the spirit of the United States' accession to the Convention." *Mitsubishi*, 473 U.S. at 639 n.21.

the Convention because the Convention "includ[es]" but is not limited to commerce as defined in the FAA, *id.* § 202.

Finally, Antrix invokes the Supreme Court's observation in *Verlinden B.V. v. Central Bank of Nigeria* that the FSIA's exceptions to foreign sovereign immunity require "some form of substantial contact with the United States" to support its argument that the arbitration exception cannot reach a dispute with no commercial nexus with the United States. 461 U.S. 480, 490 (1983). That position is unpersuasive. *Verlinden* did not interpret the FSIA's exceptions to require a commercial nexus. Instead, *Verlinden* addressed whether the FSIA could constitutionally permit a foreign plaintiff to sue a foreign sovereign in a United States court. The Court concluded that finding jurisdiction over such cases was appropriate and would not risk transforming federal courts into "small 'international courts of claims,'" because each exception to foreign sovereign immunity within the FSIA "requir[es] some form of substantial contact with the United States." *Id*. Thus, *Verlinden* did not impose a commercial nexus requirement into the FSIA's enumerated exceptions, but rather, acknowledged that the specificity of each enumerated exception adequately guards against the threat of an unbounded assertion of jurisdiction.

Our conclusion accords with that of the D.C. Circuit, which has held that the arbitration exception reaches an action to confirm an award covered under the New York Convention.**[7]** *See Process & Indus. Devs. Ltd. v. Fed.*

---

[7] Because the arbitration exception supplies subject matter jurisdiction in this case, we do not consider whether the waiver exception under the FSIA would also supply subject matter jurisdiction. *See* 28 U.S.C. § 1605(a)(1). As the Supreme Court has explained, "[i]f one of the specified exceptions to sovereign immunity applies, a federal district

*Republic of Nigeria*, 27 F.4th 771, 776 (D.C. Cir. 2022) (recognizing that "the New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception" of the FSIA (citation modified)); *cf. Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013) (reaching the same conclusion as to awards under the International Centre for Settlement of Investment Disputes Convention).

## B.  Personal Jurisdiction Under the Fifth Amendment

The FSIA provides that personal jurisdiction over a foreign state exists wherever an exception to immunity applies and service has been made. 28 U.S.C. § 1330(b). Antrix contends that, even so, the exercise of personal jurisdiction over it violates the Due Process Clause of the Fifth Amendment. *See* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."). We assume without deciding that Antrix is a "person" entitled to the protections of the Fifth Amendment's Due Process Clause. Even on that assumption, the exercise of personal jurisdiction here is reasonable and therefore comports with due process.

The Supreme Court recently addressed the personal jurisdiction requirements of the Fifth Amendment's Due Process Clause in *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025). That case concerned the personal jurisdiction provision of the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"). *See id.* at 5-6.

---

court may exercise subject-matter jurisdiction." *Verlinden*, 461 U.S. at 493; *cf. Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (explaining that the FSIA's exceptions are the exclusive avenues to jurisdiction over a foreign state and that establishing one exception suffices).

The Court "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment," reasoning that the Fifth Amendment "necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id.* at 16. The Court did not "delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U. S. courts." *Id.* at 18. Nor did the Court determine whether it is necessary to "inquir[e] into the reasonableness of the assertion of jurisdiction" under the Fifth Amendment's Due Process Clause. *Id.* at 23 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 115 (1987)). Instead, the Court held that the PSJVTA "easily" satisfied any reasonableness requirement under the Fourteenth Amendment without deciding whether such an inquiry is constitutionally compelled in the context of the Fifth Amendment. *Id.* at 23-24.

In assessing reasonableness, the Court weighed three factors: (1) "the interests of the forum State," (2) "the burden on the defendant," and (3) the "plaintiff's interest in obtaining relief." *Id.* at 24 (quoting *Asahi*, 480 U.S. at 113). As to the United States' interests as the forum state, the Court explained that the United States had a "strong interest in permitting American victims of international terror to pursue justice in domestic courts" and in balancing "sensitive and weighty interests of national security and foreign affairs" with "fairness to th[e] particular defendants." *Id.* at 20 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010)). As to the burden on the defendants, the Court found the burden on the Palestine Liberation Organization and Palestinian Authority manageable because they were "sophisticated international organizations that operate billion-dollar budgets and govern

a territory recognized as a sovereign state by many other countries." *Id.* at 24 (citation modified). Finally, regarding the plaintiff's interest in obtaining relief, the Court concluded that the plaintiffs "had a strong interest in seeking justice through [a] . . . damages action in U.S. courts." *Id.*

Here, too, the exercise of personal jurisdiction over Antrix pursuant to the personal jurisdiction provision of the FSIA is reasonable and thus comports with the Fifth Amendment.

First, the United States has a substantial interest as the forum sovereign. Like the PSJVTA in *Fuld*, the FSIA grants personal jurisdiction over disputes with sovereign states only when narrow and specific exceptions to immunity are met, reflecting a balanced political judgment. *See Fuld*, 606 U.S. at 20; 28 U.S.C. § 1330(b) (providing that "[p]ersonal jurisdiction over a foreign state shall exist" as to every claim for which an exception to foreign sovereign immunity applies under the FSIA and where service has been made). As relevant in this case, the FSIA's arbitration exception withdraws immunity from Antrix because this case concerns an award governed by a treaty in force for the United States. 28 U.S.C. § 1605(a)(6). Thus, the FSIA's personal jurisdiction provision, interpreted in conjunction with the FSIA's narrow exceptions to foreign sovereign immunity, reflects the considered judgment of Congress and the Executive to enforce the United States' treaty obligations and to ensure "the reciprocal observance of the [treaty]." *Medellín v. Texas*, 552 U.S. 491, 524 (2008) (observing the importance of ensuring reciprocal observance of the Vienna Convention); *see* U.S. Const. art. VI, cl. 2.

Second, the burden on Antrix is reasonable. Antrix is a sophisticated party that, through its parent government,

India, commands substantial resources, and Antrix does not contend that litigating in the United States imposes any undue hardship. *See Fuld*, 606 U.S. at 24.

Third, Devas's interest in obtaining relief is substantial. As the district court correctly determined, Devas has no alternative forum outside the United States "in which to execute on property Antrix may own in the United States." *See TMR Energy*, 411 F.3d at 303-04 (reasoning from 28 U.S.C. §§ 1609 and 1610(a)(6) that only courts in the United States can attach a foreign state's United States assets). Nor can Antrix claim unfair surprise. Antrix is wholly owned by India, and India is a signatory to the New York Convention, which provides for enforcement in the courts of any country in which the treaty is in force. *See Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (listing contracting states); N.Y. Convention art. III. Moreover, Antrix agreed that an arbitral award arising out of the Agreement could be "entered in any court of competent jurisdiction." It thus could not "have come as much of a surprise" to Antrix that Antrix would be "haled into U.S. courts." *Fuld*, 606 U.S. at 24-25.

Accordingly, the exercise of personal jurisdiction over Antrix is consistent with the Fifth Amendment.

## C. Forum Non Conveniens

Antrix argues that the district court should have dismissed this action under the doctrine of *forum non conveniens* in favor of litigation in India. We hold that the doctrine does not apply to an action to confirm a foreign arbitral award under the New York Convention.

Whether *forum non conveniens* is available in an action to confirm a foreign arbitral award under the New York Convention is a question of first impression in this circuit. We begin, as we must, with the text of the Convention, and we conclude that the doctrine has no place in an action governed by the Convention. The Convention makes the recognition and enforcement of a covered award mandatory: Article III provides that each contracting state "*shall* recognize arbitral awards as binding and enforce them," and Article V provides that recognition and enforcement "may be refused . . . *only* if" the party resisting enforcement establishes one of an enumerated set of grounds. N.Y. Convention arts. III, V (emphasis added). That list does not include the inconvenience of the forum. To allow a court to decline enforcement on a ground the Convention does not recognize would add a defense the treaty does not envision. *Accord* Restatement (Third) of the U.S. Law of Int'l Comm. Arb. § 4.27 (Am. L. Inst. 2023) (observing that applying *forum non conveniens* to an action governed by the New York Convention would conflict with the Convention's command that, absent an enumerated defense, contracting states recognize and enforce covered awards).

Our precedent confirms that *forum non conveniens* does not apply to actions to confirm a foreign arbitral award pursuant to the New York Convention. In *Hosaka v. United Airlines, Inc.*, we held that *forum non conveniens* did not apply to actions brought pursuant to the Warsaw Convention, a multilateral treaty governing the international carriage of passengers, baggage, and cargo by air, which allowed plaintiffs to bring an action for damages in certain signatory countries. 305 F.3d 989, 1003-04 (9th Cir. 2002); *see also id.* at 994-95 (describing the Warsaw Convention). In that case, we held that *forum non conveniens* was

incompatible with the Warsaw Convention's goal of uniform rules and the balance the treaty struck among the affected interests. *Id.* at 996-97. The same considerations control here. The "principal purpose" of the New York Convention is "to unify the standards by which . . . arbitral awards are enforced in the signatory countries." *Scherk*, 417 U.S. at 520 n.15. A discretionary, forum-by-forum defense to enforcement that would let each signatory state decline enforcement on convenience grounds is irreconcilable with the design of the Convention.

Nor does the Convention's direction that states enforce awards "in accordance with the rules of procedure of the territory where the award is relied upon," N.Y. Convention art. III, leave room for the application of *forum non conveniens*, which is a procedural rule. That clause permits variation in the *manner* in which a signatory state enforces an award; it does not authorize a signatory state to decline to enforce an award at all. *See Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 399 (2d Cir. 2011) (Lynch, J., dissenting) ("In other words, the 'procedure' provisions of the treaties permit variation with regard to the manner in which signatory states enforce international arbitration awards; they do not provide a means by which a state may decline to enforce such awards at all."); *cf. Hosaka*, 305 F.3d at 994-96 (concluding that the doctrine of *forum non conveniens* did not apply to actions under the Warsaw Convention, even though the Warsaw Convention's direction that "[q]uestions of procedure shall be governed by the law of the court" created ambiguity).[8]

---

[8] The Second Circuit reached a different conclusion under a similar but not identical treaty, the Panama Convention. The Second Circuit reasoned that a similar procedural clause in the Panama Convention

Even apart from the New York Convention's text and purpose, the structure of an enforcement action under the Convention forecloses *forum non conveniens* on its own terms. The doctrine of *forum non conveniens* presupposes an adequate alternative forum. But a proceeding to confirm a foreign award seeks to reach the sovereign's commercial assets located in the United States, and only a United States court can attach assets found here. A foreign court therefore cannot supply the relief such an action seeks. *See* 28 U.S.C. §§ 1609, 1610(a)(6); *TMR Energy*, 411 F.3d at 303-04. Thus, there is no alternative forum in which the prevailing party could obtain the relief the Convention guarantees. *See* N.Y. Convention art. III (providing that each contracting state "shall recognize arbitral awards as binding and enforce them"); *id.* art. V (enumerating the exclusive grounds on which recognition and enforcement "may be refused").**[9]**

Our conclusion accords with that of the D.C. Circuit, which has "squarely held 'that *forum non conveniens* is not available in proceedings to confirm a foreign arbitral award because only U.S. courts can attach foreign commercial assets found within the United States.'" *Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021) (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 876 n.1 (D.C. Cir. 2021)). We therefore hold that *forum non conveniens* does

---

leaves room for the application of *forum non conveniens*. *See Figueiredo*, 665 F.3d at 391-92. As stated above, we find the *Figueiredo* dissent more persuasive.

[9] We reserve the question of whether it may be appropriate for a district court to transfer an action to confirm a foreign arbitral award under 28 U.S.C. § 1404 "[f]or the convenience of parties and witnesses" to another district court in the United States.

not apply to an action to confirm a foreign arbitral award under the New York Convention.[10]

## IV. Conclusion

For the reasons set forth above, we affirm the judgment of the district court as to subject matter jurisdiction, personal jurisdiction, and *forum non conveniens*. In the memorandum disposition filed concurrently with this opinion, we affirm the district court's confirmation of the Award and its registration of the judgment as to DMAI, but reverse and vacate in part as to the Shareholder Intervenors' standing to register the judgment, and we remand for the district court to address the effect of the Indian set-aside proceedings in the first instance.

**AFFIRMED in part and REVERSED and VACATED in part.**

---

[10] We note that even if the doctrine of *forum non conveniens* applied in this case, the district court did not abuse its discretion in declining to dismiss Devas's petition to confirm the Award. A defendant invoking *forum non conveniens* bears the burden of demonstrating an adequate alternative forum. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011). "An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Id.* As explained above, the district court correctly concluded that India is not an adequate alternative forum because Devas cannot reach United States assets through proceedings in Indian courts.